UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES MILTON,<br>TDCJ #1334819<br>    *Plaintiff*, | §<br>§<br>§<br>§ | |
| | § | Civil Action No. 4:17-cv-03425 |
| v. | §<br>§ | |
| DEBBIE BALLARD, JOSEPH NJERI,<br>CHET DILLENBECK, DONALD<br>MCMURREY,<br>    *Defendants*. | §<br>§ | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

1.    Plaintiff James Milton ("Milton") brings this First Amended Complaint against Defendants Debbie Ballard, Joseph Njeri, Chet Dillenbeck, and Donald McMurrey, alleging violations of his constitutional and statutory rights. Defendants were deliberately indifferent to Milton's medical needs as a blind man, and that indifference caused Milton seriously injuries.

2.    In approximately 1998, Milton suffered a head injury that caused significant damage, including seizures and severe visual impairment. Milton is unable to see anything more than faint shadows, and accordingly requires the constant use of a visual assistance cane while walking.

3.    Milton has been incarcerated at the Estelle Unit of the Texas Department of Criminal Justice ("TDCJ") in Huntsville, Texas since approximately 2005. Milton's visual disability was known to all relevant TDCJ employees, including Defendants, from his medical evaluation during the intake process in 2005 through present. Specifically, as a result of Milton's visual disability, his housing is restricted to lower-berth beds in ground-floor cells. These

restrictions are reflected on his "HSM-18" form that is available to be viewed by all TDCJ employees.

4. Defendants ignored Milton's HSM-18 by intentionally moving him to a second-floor cell where he was housed for approximately five days in an unsafe environment. After five days, when Defendants belatedly recognized their error, Defendants caused Milton to be moved back downstairs to a ground-floor cell as required by his housing restrictions. During this move back downstairs, Defendants contravened TDCJ policies and refused to assist Milton. Each of these actions constitutes deliberate indifference to Milton's medical needs, and caused Milton to fall approximately ten feet and suffer serious injuries for which he continues to experience pain and suffering

5. Defendants' actions violate Milton's constitutional rights under the Eighth Amendment to the United States Constitution and his statutory rights under the Americans with Disabilities Act. Milton accordingly requests monetary damages and injunctive relief.

**PARTIES**

6. Plaintiff James Milton, TDCJ #1334819, is currently a prisoner at TDCJ's Estelle Unit, where he has resided since 2005.

7. Defendant Debbie Ballard was Chief of Classification for the Estelle Unit from May 2013 through November 2017, and had responsibility for supervising the assignment of prisoners to cells. Ballard is currently Program Specialist III, Classification Coordinator.

8. Defendant Joseph Njeri was a Sergeant at TDCJ's Estelle Unit from approximately November 1, 2015 through June 20, 2018. Njeri was on duty at times relevant to Milton's claims for relief and directly interacted with him.

9.      Defendant Chet Dillenbeck was a Correctional Officer at TDCJ's Estelle Unit from August 2015 through 2016. Dillenbeck was on duty at times relevant to Milton's claims for relief and directly interacted with him.

10.     Defendant Donald McMurrey was a Lieutenant at TDCJ's Estelle Unit during the time frame relevant to this lawsuit. McMurrey was on duty at times relevant to Milton's claims for relief and directly interacted with him.

## JURISDICTION AND VENUE

11.     This action arises under 42 U.S.C. §§ 1983 and 1988, the Eighth Amendment to the United States Constitution and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq*. This Court accordingly has jurisdiction pursuant to 28 U.S.C. § 1331.

12.     Venue is proper in the U.S. District Court for the Southern District of Texas, Houston Division, because the Defendant is located in Walker County, Texas, where the events giving rise to this action have occurred. 28 U.S.C. § 1391(b)(2).

## FACTS

**A.      Milton's Head Injury and Imprisonment.**

13.     In 1998, Milton suffered permanent blindness and neurological damage after suffering a grievous head injury. After lying in a coma for approximately two months, he awoke to realize that he was only able to see shadows of objects without any color, detail or depth, even with a magnifying glass. Milton's head injury also caused him to suffer ongoing cognitive impairment and grand mal seizures, for which he continues to be medicated every day.

14.     Milton began using a visual assistance cane immediately after his injury, which he continues to use through today. Milton also began wearing thick, dark sunglasses for UV protection in approximately 2006, which he also continues to wear through today. When not

wearing the sunglasses, Milton's blindness is obvious to anyone speaking with him as he is unable to focus his eyes on a single individual or object and does not attempt to make eye contact. Milton's nickname in the Estelle Unit, among both fellow prisoners and correctional officers, is "Blind."

15.     Milton began serving his current prison sentence on or about December 5, 2005 at TDCJ's W.J. Jim "Estelle" Unit for aggravated assault and felon in possession of a firearm. On or about December 8, 2005, Milton was medically evaluated by University of Texas Medical Branch ("UTMB") medical personnel assigned to TDCJ's Estelle Unit, who created a "Health Summary for Classification 18" ("HSM-18") form associated with Milton's TDCJ file. Based on Milton's visual disability, UTMB personnel recommended on Milton's HSM-18 that his housing be restricted to ground floor cells only, and the lower bunk within a cell. Milton's HSM-18 form also recommended that he not be assigned any jobs within TDCJ, also due to his visual disability.

16.     TDCJ policies, procedures and guidelines require its Classification Unit (which is responsible for housing prisoners) to abide by the medical opinions and recommendations of UTMB personnel as stated in a prisoner's HSM-18 form at all times. This applies to both a prisoner's initial housing and any subsequent changes to his housing, temporary or permanent.

17.     Despite Milton's unambiguous housing restriction to lower bunks on ground floor cells, and TDCJ's policies, TDCJ employees ignored Milton's HSM-18 on at least two occasions prior to the November 2015 incident at issue. During one of those incidents, while Milton was being moved upstairs to a second-floor cell, a TDCJ sergeant who observed the move asked another sergeant who was escorting Milton whether that sergeant knew that Milton was blind and therefore should not be housed upstairs.

**B.      Milton's Improper Housing and Subsequent Fall in November 2015.**

18.      On November 26, 2015, Defendant McMurrey, the supervisor Lieutenant then on duty, decided to move Milton from his then-current cell on the ground floor of the K1 wing to a second-floor cell on the D1 wing. Upon information and belief, McMurrey contravened TDCJ's policies and procedures by failing to review Milton's HSM-18 to determine whether this new housing assignment complied with Milton's housing restrictions, which it did not. Moving Milton to a second-floor cell placed him at an unreasonable risk of serious harm.

19.      Defendant Njeri received the order from McMurrey to move Milton to a new cell on the second floor of the D1 wing. When Njeri instructed Milton to pack up his belongings for a move to a second-floor cell, Milton informed Njeri that his HSM-18 form restricted him to a ground floor cell. Njeri ignored Milton's concerns despite the fact that Milton was clearly visually disabled, and also suffered from seizures for which he is medicated daily, and personally moved Milton to a second-floor cell, which placed Milton at an unreasonable risk of serious harm.

20.      Defendant Ballard, as the Estelle Unit's Chief of Classification in November 2015, was responsible for the safe and proper housing of all prisoners. Her responsibilities as Chief included reviewing all movements and reassignments of prisoners to ensure that their new cells complied with any applicable HSM-18 housing restrictions. Upon information and belief, Ballard acted contrary to her responsibilities as Chief by not discovering that Milton's cell assignment violated his HSM-18 housing restrictions until November 30, 2015. Further, as Chief of Classification, Ballard was required to institute policies, guidelines and training that would ensure TDCJ employees properly housed prisoners according to their HSM-18 forms. Ballard failed to do so, and the omission of proper policies, guidelines and training caused McMurrey and Njeri to improperly house Milton for five days with a corresponding unreasonable risk of serious harm.

21.     From November 26, 2015 when Milton was moved upstairs, through November 30, 2015, when he was ordered to move back downstairs, Milton remained on the second floor of the D1 wing and had not navigated any staircase. Food was brought directly to his cell, and he could access restroom and shower facilities on the second floor.

22.     Upon information and belief, when Ballard discovered on November 30, 2015 that Milton's housing was improper and conflicted with his HSM-18 restrictions, she ordered that he be moved back to a ground-floor cell on the K1 wing.

23.     Defendant Dillenbeck received the order to move Milton on November 30, 2015, and instructed Milton to gather his personal possessions. As with Njeri, Milton advised Dillenbeck of his visual disability and difficulty in navigating stairs due to his constant use of a visual assistance cane. Milton was also clearly visually disabled, and was referred to as "Blind" by both fellow prisoners and also correctional officers, including Dillenbeck. Milton also suffered from seizures, for which he received daily medication. Dillenbeck ignored Milton's reminder of his disabilities and ordered Milton to carry all of his personal possessions, by himself, back down the metal staircase to the ground floor.

24.     When moving prisoners to a new cell, TDCJ correctional officers have several options to provide assistance to prisoners who require it. These include: (1) asking another officer to help; (2) procuring a laundry cart to store and transport a prisoner's personal possessions during the move; and (3) asking the "support service inmate" currently on duty (a specific job assignment within TDCJ for prisoners) to assist.

25.     Roderick Abney (TDCJ #01602280), a fellow prisoner who on information and belief was a "support service inmate" on his job shift at the time, witnessed the conversation between Dillenbeck and Milton regarding the move and offered to assist Milton in moving back

downstairs. Dillenbeck, however, ordered Abney to "stand down" and refused to allow him to assist Milton.

26. Dillenbeck also declined to request assistance from another officer or to procure a laundry cart. Instead, Dillenbeck forced Milton to hold his personal possessions in one arm while he held his visual navigation cane in his other hand and walked down the metal stairs without assistance. Dillenbeck's actions caused Milton to suffer an unreasonable risk of harm.

27. After descending a few steps down the staircase, Milton became disoriented and, in an effort to regain his balance, pushed down his visual navigation cane. The cane became stuck in the staircase and broke in half. Without this support, and with his personal belongings still in one arm, Milton then fell down the remaining stairs, a distance of approximately ten feet, and landed at the bottom of the staircase.

C. **Milton's Mistreatment During Initial Medical Evaluation.**

28. Milton was unable to stand after falling to the bottom of the staircase, and medical personnel were summoned by TDCJ officers through a "Flash" call. Milton was placed on a gurney, immobilized, and transported to the Estelle Unit's infirmary.

29. Upon arriving at the infirmary, UTMB medical staff performed an initial medical examination of Milton. Milton was ordered to remain immobilized and was left under the supervision of Njeri for a period of time. When Milton expressed the need to medical personnel to use the bathroom, they were preparing to provide him with a bedpan to use as a portable urinal. Njeri, however, refused to allow medical personnel to provide Milton with the portable urinal, and ordered Milton to use the bathroom himself if he needed to. Milton did so, without any assistance, at great pain to himself and in contravention of medical instructions because of Njeri's indifference to Milton's medical situation.

30.     Having injured his neck, back and shoulder, Milton was provided with a neck collar to stabilize his neck and reduce the risk of further injury. UTMB medical staff also prescribed pain medication and ordered radiology tests. Those radiology tests were scheduled at UTMB-Galveston's John Sealy Hospital in Galveston, Texas.

**D.     Milton's Subsequent Medical Treatment and Ongoing Pain.**

31.     Several months later, Milton was evaluated again for his injuries, which included an MRI scan. The scan revealed that as a result of his November 30, 2015 fall, Milton had suffered injuries to his spine and shoulder, which explained the pain he was experiencing.

32.     As Milton continued to experience pain over the following months and years, he received additional medical evaluations and, as part of those evaluations, a cervical collar (for his neck) and a lumbar brace (for his back).

33.     From approximately August 2016 through present, Milton has repeatedly requested and at times been prescribed physical therapy to help treat his neck, back and shoulder injuries suffered as a result of his November 30, 2015 fall. As of the date of Milton's initial prisoner civil rights complaint filed in this case, he had not received even one session of physical therapy.

34.     After filing his complaint, Milton received a brief regime of physical therapy that ended in approximately May 2018.

35.     Additionally, there is a specific section of the Estelle Unit that is specially designed for prisoners with disabilities, and is commonly referred to as the "ADA Wing." After not being housed in the ADA Wing for more than a decade, Milton was moved to the ADA Wing in the spring of 2018.

## CAUSES OF ACTION

### Count I: Deliberate Indifference to Milton's Medical Needs under 42 U.S.C. § 1983
### (All Defendants in Their Individual Capacities)

36. The preceding paragraphs are incorporated by reference as if restated in full herein.

37. As part of the Eighth Amendment's prohibition of "cruel and unusual punishments," the government may not be deliberately indifferent to a prisoner's medical needs.

38. Defendants Ballard, Njeri, Dillenbeck, and McMurrey are all officials acting on behalf of the State of Texas through their employment by TDCJ. 42 U.S.C. § 1983. Their actions deprived Milton of his rights under the Eighth Amendment of the United States Constitution.

39. At all times, Defendants were aware that Milton was visually and cognitively impaired, specifically that he was blind and required the use of a visual assistance cane. Defendants were also aware that Milton suffered from a seizure disorder, for which he was provided medication every day. Defendants were also aware of Milton's housing restrictions (ground floor cells and bottom bunks only) present in his HSM-18 form.

40. Defendant McMurrey ignored and contravened Milton's HSM-18 housing restrictions by ordering Milton to be moved to an upstairs cell on November 26, 2015.

41. Defendant Njeri ignored and contravened Milton's HSM-18 housing restrictions by complying with McMurrey's order and instructing Milton to move upstairs to a second-floor cell on or about November 26, 2015.

42. Defendant Ballard ignored and contravened Milton's HSM-18 housing restrictions by allowing Milton to be improperly housed from November 26 through November 30, 2015. As Chief of Classification, Ballard had the authority to move Milton at any point. Ballard also failed to properly train and supervise the TDCJ officers responsible for housing Milton, including McMurrey and Njeri, which caused Milton to be improperly housed for five days.

9

43.     Defendant Dillenbeck ignored and contravened Milton's HS-18 housing restrictions by ordering him to move back downstairs to a ground-floor cell on November 30, 2015, without assistance. Specifically, Dillenbeck did not seek help for Milton from a fellow officer or "support service inmate," or procure a laundry cart to store Milton's possessions during the move.

44.     As a result of the combined actions of Ballard, Njeri, Dillenbeck, and McMurrey, Milton needlessly and unreasonably was forced to move his personal belongings from an improper second-floor cell down a staircase by himself and without assistance while using his visual assistance cane to remain balanced.

45.     Defendants' deliberate indifference to Milton's medical needs caused him to fall approximately ten feet and suffer back, neck and shoulder injuries. Milton continues to suffer pain as a result of this accident.

46.     As relief for Defendants' actions and Milton's corresponding injuries, Milton seeks compensatory and punitive damages from Defendants in their individual capacities.

**Count II: Violation of Milton's Rights Pursuant to the ADA, 42 U.S.C. § 12101, *et seq*.**
**(All Defendants in Their Official Capacities)**

47.     The preceding paragraphs are incorporated by reference as if restated in full herein.

48.     Milton's visual disability constitutes "a physical or mental impairment that substantially limits one or more major life activities" and he is therefore "disabled" and protected by the ADA. 42 U.S.C. § 12102(1). Milton is also a "qualified individual with a disability" as defined in the statute. *Id.* § 12131(2).

49.     TDCJ is a "public entity" as defined in Title II of the ADA. 42 U.S.C. § 12131(1)(B). Defendants Ballard, Njeri, Dillenbeck, and McMurrey were acting within the scope of their employment as agents of TDCJ at all times relevant to the facts of this lawsuit.

50.     Milton, as a "qualified individual with a disability," may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

51.     Defendants' actions, which caused Milton to be improperly housed for five days and then fall approximately ten feet after being forced to move his personal belongings without assistance, violated his rights as a "qualified individual with a disability" under the ADA.

52.     To compensate for Defendants' actions and Milton's corresponding injuries, Milton seeks injunctive relief against Defendants in their official capacities that: (1) at all times his housing must comply with his HSM-18 restrictions; and (2) TDCJ must provide all forms of physical therapy and physical medicine (including cervical and lumbar support) that is prescribed by UTMB medical professionals.

## JURY DEMAND

53.     Milton demands a trial by jury.

## REQUEST FOR RELIEF

54.     Milton requests the following relief:

   a. Compensatory and punitive damages against Defendants Ballard, Njeri, Dillenbeck, and McMurrey;

   b. Permanent injunction ordering Defendants to comply with and provide all medical care, including physical therapy and cervical and lumbar support, that is prescribed by UTMB medical staff;

   c. Permanent injunction ordering Defendants to ensure at all times that Milton's housing complies with the restrictions present in his HSM-18 form;

d. Find that Milton is the prevailing party in this case and award him attorney

   fees, court costs, expert costs and litigation expenses pursuant to 42 U.S.C.

   § 1988; and

e. Grant such other relief as appears reasonable and just, to which Milton is

   entitled.


DATED: December 14, 2018

Respectfully submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C.**

*/s/ Justin S. Rowinsky*
Ryan Hackney
Texas Bar No. 24069850
rhackney@azalaw.com
Shahmeer Halepota
Texas Bar No. 24109968
shalepota@azalaw.com
Justin S. Rowinsky
Texas Bar No. 24110303
jrowinsky@azalaw.com
AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI &MENSING, P.C.
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Tel: (713) 655-1101
Fax: (713) 655-0062

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2018, a true and correct copy of the above and foregoing document was sent to the counsel of record by email and/or United States mail.

Bruce R. Garcia
Penny Maley
Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711
Bruce.Garcia@aog.texas.gov
Penny.Maley@oag.texas.gov

*Attorneys for Defendants*

/s/ *Justin S. Rowinsky*
Justin S. Rowinsky